IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHNEIDER EQUIPMENT, INC.,          CV 04-1482-HA

              Plaintiff,             OPINION
                                   AND ORDER
     v.

THE TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

              Defendant.
_____

Michael K. Kelley
Christopher G. Lundberg
Haglund Kelley Horngren & Jones
101 S.W. Main Street, Suite 1800
Portland, Oregon 97204
        Attorneys for Plaintiff.

Everett W. Jack, Jr.
Kathleen R. Dent
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201-5630
        Attorneys for Defendant.

HAGGERTY, Chief Judge:

Plaintiff commenced this action in Multnomah County Circuit Court on July 26, 2004, asserting a claim for breach of insurance contract stemming from defendant's refusal to defend plaintiff in another lawsuit (hereinafter referred to as the underlying action). On October 12, 2004, defendant removed this action to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1332, 1441, 1446. On October 19, 2004, defendant filed a counterclaim for a declaratory judgment that defendant is not obligated under two insurance policies issued to plaintiff to defend or indemnify plaintiff against the claims in the underlying action.

On April 6, 2004, defendant filed a Motion for Summary Judgment (Doc. #9) against plaintiff's breach of contract claim and in favor of its claim for declaratory relief. The court heard oral argument on June 17, 2005. For the following reasons, defendant's Motion for Summary Judgment is denied.

**BACKGROUND**

The following facts are construed in the light most favorable to plaintiff, the non-moving party. Plaintiff Schneider Equipment, Inc. (Schneider or plaintiff) is engaged in the business of constructing complete water systems, including water-well drilling, installation of water pumps and controls, and related services. A large portion of plaintiff's business is the drilling of wells for water systems. Defendant is the underwriter of two commercial liability policies held by plaintiff.

The underlying action

On May 14, 2002, plaintiff entered into a contract with Golf Solutions, LLC (Golf Solutions) to rehabilitate an existing water well located on the Stone Creek Golf Course in Clackamas County, Oregon (the well). Approximately one year earlier, the well's pump had been damaged and removed because there were large amounts of sand in the water, which

had caused part of the well's walls to cave in. The caved in portion of the well was located below the end of the well's steel casing, approximately 800 feet below ground level.

Plaintiff contracted with Golf Solutions to re-drill the lower borehole below the steel casing and to install a screen assembly and filter pack. After plaintiff had successfully re-drilled the lower section of the well and installed the screen, it began to develop and test the altered portion of the well. During that process, one of plaintiff's employees unintentionally bumped a rotation lever on a drill, which caused the drill to rotate and damage the screen. The damaged screen partially obstructed water passage up the screen and prevented access to the inside of the screen, hindering the completion of the well. Plaintiff attempted to repair the damage to the screen, but was unable to do so.

As a result of the damaged screen, the well could not produce the anticipated volume of water. However, the well was functional and produced water with a lower sand content than before. Nonetheless, Golf Solutions determined that the well was unusable and that construction of a new well was necessary.

In February 2004, Golf Solutions[1] filed a cause of action against plaintiff in Clackamas County Circuit Court. In its First Amended Complaint, Golf Solutions alleged that plaintiff's negligence "render[ed] the well unusable . . . requiring a completely new well to be developed at a different location, at additional cost to [Golf Solutions]." Affidavit of Everett W. Jack, Jr. (Jack Aff.), Ex. 1 at 2-3. Golf Solutions alleged damages of: (1)

---

[1] For consistency and simplicity, this court refers to Golf Solutions as the plaintiff in the action against Schneider. In fact, the caption on the complaint in the underlying action indicates that it was filed by Clackamas Golf, LLC (Clackamas Golf), a limited liability company formed in conjunction with Clackamas County and Golf Group, Inc., a Texas corporation doing business as Golf Services Group (GSG), for the purpose of creating funding for the development of a golf course. Golf Solutions is a wholly owned subsidiary of GSG.

$125,000 for the lost value of the original well; (2) $250,000 as the difference between the cost to build a new well and to repair the original well; (3) $60,000 for the cost of purchasing supplemental water; and (4) $10,000 for the cost of hiring a hydrologist during the construction of the new well.

Plaintiff tendered the complaint to defendant for a defense, but defendant denied coverage. Plaintiff then initiated the present action against defendant for breach of contract.

Plaintiff's insurance policies

At the time of the incident with the well, plaintiff had two commercial liability policies underwritten by defendant: (1) a commercial general liability policy (the CGL Policy) and (2) a Commercial Inland Marine policy (the IM Policy). Plaintiff purchased both of these policies through broker Derek Sadowski (Sadowski), an authorized producer for defendant.

The CGL Policy provides as follows:

**Coverage A – Bodily Injury and Property Damage Liability** . . .

**1. Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.
. . . .

    **b.**    This insurance applies to . . . "property damage" only if:

        **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the coverage "territory" . . . .

Jack Aff., Ex. 2 at 21.

The CGL Policy also contained the following exclusions:

**2. Exclusions**

    This insurance does not apply to:

. . . .

**h.** Damage to Property

"Property damage" to:

. . . .

> **(6)** That particular part of any property:

> > **(a)** On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> > **(b)** That must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

**k.** Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Jack Aff., Ex. 2 at 7, 9-10.

The IM Policy provides as follows:

**A. COVERAGE**

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means:

> a. "Contractors Equipment";

> b. "Computerized Business Equipment";

c. "Installation".

**2. Covered Causes of Loss**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" except those causes of "loss" listed in the Exclusions.

Jack Aff., Ex. 3 at 20.

The IM Policy also contained the following exclusions:

**B. EXCLUSIONS**

. . . .

2. We will not pay for "loss" caused by or resulting from any of the following:

a. Delay, loss of use or loss of market.

. . . .

3. We will not pay for "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

. . . .

i. Omission in, or faulty, inadequate or defective:

. . . .

(2) Materials, workmanship or maintenance.

Jack Aff., Ex. 3 at 25-26, 28.

Also at issue in this action is a General Purpose Endorsement (Endorsement), which

defendant claims altered the IM Policy. The Endorsement states as follows:

INSTALLATION COVERAGE – COVERED WORK LIMITATION

. . . .

"Installation" does not include":

> d. Any work involving drilling operations. The revenue generated from these operations need not be reported in the annual adjustment of premium.

Jack Aff., Ex. 3 at 40.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is not appropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have some limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Principles of insurance policy construction

Generally, "[t]he interpretation of an insurance policy is a question of law." *N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739,741 (Or. 2001) (citing *Hoffman Constr. Co. v. Fred S. James & Co.,* 836 P.2d 703, 706 (Or. 1992)).  In interpreting an insurance policy, the court must focus on the intent of the parties, which is determined by looking to the terms and conditions of the policy.  *Id.* (citations omitted).  The policy must be considered as a whole and viewed by its four corners, and all parts and clauses must be construed to determine if any clause is modified, limited, or controlled by another.  *Id.* (internal quotations and citations omitted).

If a term of an insurance policy is ambiguous, the court must construe the term against the drafter of the policy.  *Id.*  A term is ambiguous, for the purposes of this rule of construction, if there are two or more reasonable interpretations of the term when examined in light of the particular context in which the term is used in the policy and the broader context of the policy as a whole.  *Id.* (citing *Hoffman*, 836 P.2d at 706).  A term may also be ambiguous if its meaning is not comprehensible for reasons such as indefiniteness, erroneous usage, or form of expression.  *Id.*

Duty to defend

"Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994) (en banc) (citation omitted).  "An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without

amendment, impose liability for conduct covered by the policy." *Id.* (citations omitted). Any ambiguity in the complaint as to whether the allegations could be covered must be resolved in favor of the insured. *Id.*

## ANALYSIS

Defendant argues that plaintiff's claim is not covered by the CGL Policy because the damage to the well: (1) was not caused by an "occurrence"; (2) falls under Exclusion h(6) because it was damage to "[t]hat particular part of any property" on which plaintiff was performing operations; and (3) falls under Exclusion k because the well is "impaired property." Defendant also argues that plaintiff's claim is not covered by the IM Policy because that policy expressly excludes: (1) any loss arising from plaintiff's drilling operations; (2) damage to property caused by plaintiff's faulty workmanship; and (3) damages based on economic losses.

**A. The CGL Policy**

### 1. The property damage was caused by an "occurrence"

As stated above, the CGL Policy provides coverage for property damage only if it is caused by an "occurrence" that takes place in the coverage territory. Jack Aff., Ex. 2 at 21. The CGL Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 19. Defendant argues that the damage to the well was not caused by an "accident," but, instead, was caused solely by plaintiff's failure to meet its contractual obligations to repair the well.

Under Oregon law, a loss that occurs only as a result of an insured's failure to fulfill its contractual obligations is not an "accident" within the meaning of a commercial liability policy. *Oak Crest Constr. Co. v. Austin Mut. Ins. Co.*, 998 P.2d 1254, 1257 (Or. 2000) ("there can be no 'accident,' within the meaning of a commercial liability policy, when the

resulting damage is merely a breach of contract"); *see also Kisle v. St. Paul Fire & Marine Ins.*, 495 P.2d 1198 (Or. 1972) (the complete failure of timely performance of a contract is not an "accident").  However, "property damage that results from the negligent performance of a contract can qualify as being 'caused by accident'" if the damage results from a tort. *Oak Crest*, 998 P.2d at 1257.

Here, plaintiff seeks to recover the damages sought against it by Golf Solutions, which include the lost value of the original well, the cost of constructing a new well, and consequential damages for expenditures on supplemental water and hiring a hydrologist. Defendant contends that the facts here are analogous to those in *Oak Crest*, in which a subcontractor painted certain cabinets, the paint failed to cure properly, and the owners of the cabinets were required to repair and repaint the cabinets.  998 P.2d at 1254.  The court in *Oak Crest* held that the subcontractor's failure to properly paint the cabinets did not constitute an "occurrence" because there were no allegations in the record that the subcontractor had breached a duty to act with due care.  *Id.* at 1257-58.  Because the plaintiff's claim arose solely from a breach of contract, the damage was not caused by an "occurrence."  *Id.* at 1258.  The court went on to explain that if the facts had demonstrated that the claimed problem with the cabinets was the result of a breach of a duty to act with due care, or if plaintiff could have been liable in tort for other damage, then the damage might have qualified as an "accident" within the meaning of the policy.  *Id.*

Contrary to defendant's argument, the situation here is just the type that the *Oak Crest* court indicated could constitute an "occurrence."  Golf Solutions's sole claim for relief in its suit against plaintiff was for negligence, and its First Amended Complaint specifically asserted that plaintiff failed "to adequately supervise or monitor the work-in-process" and failed "to properly set the screening in the well."  Jack Aff., Ex. 1 at 2-3.  The contract

between Golf Solutions and plaintiff called for plaintiff to install the screen, and the fact that the screen was inadvertently damaged by one of plaintiff's employees, and thereby caused irreparable damage to the well, sounds in tort. For these reasons, the court finds that the language of this provision is unambiguous and that the damage to the well was caused by an "occurrence."

### 2. Plaintiff has raised a triable issue as to Exclusion h(6)

Even if the property damage to the well was caused by an "occurrence," defendant argues that the damage is excluded from coverage under Exclusion h(6) of the CGL Policy, which states that the policy does not apply to "property damage" to "[t]hat particular part of any property . . . [o]n which [plaintiff is] performing operations, if the property damage arises out of those operations; or . . . [t]hat must be restored, repaired or replaced because [plaintiff's] work was incorrectly performed on it." Jack Aff., Ex. 2 at 9. Defendant contends that the language of this exclusion encompasses the entire well, rather than just the screen. Plaintiff argues that the exclusion operates to exclude only the damage to the screen.

While the parties do not cite to any Oregon cases interpreting Exclusion h(6), the majority of other jurisdictions interpreting analogous exclusions have held that the language "that particular part of any property" includes the entire piece of property on which the insured was working at the time of the accident. *See, e.g. SW Tank and Treater Mfg. Co. v. Mid-Continent Cas. Co.,* 243 F. Supp. 2d 597, 603 (E.D. Tex. 2003) (where large steel storage tank exploded while plaintiff was installing fire heating tubes, "that particular part of real property" included entire tank because it "was a self-contained, collective unit, which constituted a single item of property"); *Util. Maint. Contractors, Inc. v. W. Am. Ins. Co.*, 866 P.2d 1093, 1097 (Kan. App. 1994) (1994) (damage to portion of a sewer pipe through which the insured's equipment traveled was excluded even when insured was hired only to unclog

a portion farther down the sewer pipe); *Jet Line Servs., Inc. v. Am. Employers Ins. Co.*, 537 N.E.2d 107, 111 (Mass. 1989) (where insured was hired to clean entire petroleum tank, the entire tank, rather than the small portion being cleaned at time of explosion, was "that particular part of any property" subject to exclusion); *Vinsant Elec. Contrs. v. Aetna Cas. & Sur. Co.*, 530 S.W. 2d 76, 78 (Tenn. 1975) (damage to entire switchboard was excluded even when insured was hired to install only two circuit breakers).

However, the court is not persuaded that it was the intent of the parties here to have such a broad exclusion. The text of the exclusion uses the narrowing term "particular," which suggests an intent to exclude the smallest possible unit of property. The intent for a narrow exclusion is also evidenced by the nature of plaintiff's work, which frequently involves conducting repairs on a small portion of a preexisting well. As such, plaintiff persuasively argues that it would have been illogical for it to pay a substantial premium for insurance that excluded all damage to any well on which it was working. As plaintiff contends, defendant's expansive interpretation of this exclusion would virtually nullify plaintiff's broad-form liability protection. Moreover, defendant's agent, Sedowski, has interpreted the CGL Policy as covering the type of damage at issue here, which also supports plaintiff's interpretation of the parties' intent.

For these reasons, the court finds that the language "that particular part of the property" is ambiguous. This provision could reasonably be interpreted as referring only to the screen plaintiff was installing near the bottom of the well, or as encompassing the entire well. Because the provision is ambiguous, the court must construe its meaning against defendant, the drafter of the policy. *N. Pac.,* 22 P.3d at 741-42. Therefore, defendant's summary judgment motion as to Exclusion h(6) is denied.

    <u>3. Plaintiff has raised a triable issue as to Exclusion k</u>

Defendant also argues that the damage is excluded under Exclusion k because the well is "impaired property" alleged to have been rendered unusable as a result of incorporating plaintiff's defective work.  As stated above, Exclusion k excludes the following:

> K. Damage to Impaired Property or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
>> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>>
>> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Jack Aff., Ex. 2 at 10.

> The CGL Policy defines the term "impaired property" as:
>
> [T]angible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
>> a.  It incorporates "your product" or "'your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
>> a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or
>>
>> b. Your fulfilling the terms of the contract or agreement.

Jack Aff., Ex. 2 at 18.

Defendant argues that Exclusion k applies here because the well:  (1) was rendered unusable as a result of plaintiff's defective work and (2) could have been restored to use if the damaged screen was removed.  Plaintiff disputes both of these assertions.  As to the first, plaintiff argues that the well was not completely unusable after the screen was damaged.

Although it did not produce a sufficient amount of water, it did produce some water, which, in fact, contained less sand than before.  As to defendant's second assertion, plaintiff argues that the well could not have been restored to its previous water-producing state, as indicated by the fact that plaintiff unsuccessfully tried to repair it.  Plaintiff further argues that Exclusion k does not apply because the well was impaired *before* plaintiff conducted any work on it.

The court finds that plaintiff has raised a genuine issue of fact as to whether the damage here falls under the "impaired property" exclusion.  There is evidence in the record supporting plaintiff's contention that the well was unusable prior to plaintiff's work on it, thus the necessity for rehabilitation, which would seemingly take the damage out of the scope of this exception.  Furthermore, there is no evidence supporting defendant's contention that the well could have been repaired after plaintiff worked on it, while the record supports plaintiff's assertion that it could not be fixed.  For these reasons, defendant's summary judgment motion based on Exclusion k is denied.

## B.  The IM Policy

Plaintiff argues that the damage here is covered by the IM Policy, which covers losses to "covered property," which includes "installation," resulting from any covered cause of loss.  Jack Aff., Ex. 3 at 20.  A "covered cause of loss" is any risk of direct physical loss except those listed in the exclusions.  *Id.*  The exclusions, in turn, provide that losses caused by plaintiff's "[o]mission in, or faulty, inadequate or defective . . . [m]aterials, workmanship or maintenance" (Exclusion i), Jack Aff., Ex. 3 at 28, or by "[d]elay, loss of use or loss of market" (Exclusion 2(a)), are excluded from coverage.  Jack Aff., Ex. 3 at 26.

Defendant argues that the IM Policy does not cover the damage because (1) the Endorsement excluded coverage for "drilling operations"; (2) plaintiff's damages are

excluded under Exclusion i because they resulted from faulty workmanship; and (3)

plaintiff's damages are excluded under Exclusion 2(a) because they are based on loss of use

of the well.

### 1. Plaintiff has raised a triable issue as to the validity of the Endorsement

Defendant contends that the damage here is excluded under the IM Policy because

plaintiff's contract with Golf Solutions required it to perform drilling operations and the

Endorsement modified the IM Policy to read that coverage for losses to "Installation" does

not include "[a]ny work involving drilling operations."  Jack Aff., Ex. 3 at 40.

Plaintiff argues that the Endorsement is not valid because plaintiff never agreed to it,

the Endorsement is unsigned and undated, defendant failed to notify plaintiff of its

existence, and defendant continued to accept premiums based in part on plaintiff's water-

well drilling revenues.  Plaintiff further argues that the Endorsement would contradict and

nullify the precise risk that plaintiff intended to cover, namely, water well drilling.

In response, defendant argues that plaintiff's act of attaching the IM Policy, including

the Endorsement, to its Complaint constituted a binding judicial admission that the terms of

the Endorsement are valid.  Defendant supports this argument by citing to *American Title

Insurance Company v. Lacelaw Corporation,* 861 F.2d 224, 226 (9th Cir. 1988), in which

the Ninth Circuit stated that "[f]actual assertions in pleadings and pretrial orders, unless

amended, are considered judicial admissions conclusively binding on the party who made

them."  (citations omitted).  However, the court in *American Title* went on to hold that

whether statements of fact contained in a brief – rather than in a complaint, answer or

pretrial order – are considered admissions of the party is left to the discretion of the trial

judge.  *Id.* at 226-27.

The court finds that attaching the entire IM Policy to plaintiff's Complaint is more analogous to making a statement in a trial brief than to asserting a fact in a complaint, answer, or pretrial order. Furthermore, in light of the fact that plaintiff has consistently disputed the validity of the Endorsement, the court is not persuaded that the attachment of the Endorsement rose to the level of a judicial admission. Therefore, the court finds that plaintiff has presented a triable issue of fact as to whether the Endorsement is valid and enforceable.

### 2. Plaintiff has raised a triable issue as to Exclusion 3(i)(2)

Exclusion i excludes losses caused by plaintiff's faulty workmanship. Defendant argues that the damages here are excluded from coverage based on the same reasoning it put forth in arguing that the CGL Policy does not provide coverage because the damage was not caused by an "occurrence." As stated above, the court finds that the damage to the well was caused by an "occurrence" under the CGL Policy because it resulted from negligence rather than from a breach of a contractual duty. The same analysis applies here, and the court finds that the damage to the well that was caused by plaintiff's negligence does not fall under the "faulty workmanship" exclusion. Therefore, defendant's summary judgment motion based on Exclusion 3(i)(2) of the IM Policy is denied.

### 3. Plaintiff has raised a triable issue as to Exclusion 2(a)

Exclusion 2(a) of the IM Policy excludes coverage for losses resulting from delay, loss of use, or loss of market. As stated above, Golf Solutions sought damages from plaintiff for: (1) the lost value of the original well; (2) the difference between the cost to build a new well and to fix the existing well; (3) the cost of purchasing supplemental water; and (4) the cost of hiring a hydrologist during the construction of the new well. Defendant

argues that these are consequential and "loss of use" damages because they all stem from damages due to Golf Solutions' loss of the use of the well. The court disagrees.

The provision's use of the terms "delay" and "loss of market" in the same phrase as "loss of use" indicates that the exclusion covers intangible economic losses, not the type of tangible, direct damages resulting from direct physical loss at issue here. As plaintiff suggests, if applicable, "loss of use" damages would refer to the golf course's lost profits or a diminution in the value of green fees. At the very least, the language of this provision is ambiguous and, therefore, must be construed against defendant. Defendant's summary judgment motion based on Exclusion 2(a) of the IM Policy is denied.

///

///

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. #9) is DENIED.

IT IS SO ORDERED.

Dated this _29_ day of June, 2005.


     /s/Ancer L.Haggerty
       Ancer L. Haggerty
     United States District Judge