UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHNEIDER EQUIPMENT, INC.,                                 Civil No.  04-1482-HA

        Plaintiff,                                                        OPINION AND ORDER

    v.

THE TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

        Defendant.

_____

HAGGERTY, Chief Judge:

      Schneider Equipment, Inc., ( plaintiff or Schneider) commenced this action against The Travelers Indemnity Company of Illinois (defendant or Travelers) in Multnomah County Circuit Court on July 26, 2004, asserting a claim for breach of insurance contract stemming from defendant's refusal to defend plaintiff in another lawsuit (hereinafter the underlying action).  On October 12, 2004, defendant removed this action to federal court based on diversity jurisdiction.  *See* 28 U.S.C. §§ 1332, 1441, 1446.  Shortly thereafter defendant filed a counterclaim seeking a declaratory judgment that defendant is not obligated, under two insurance policies issued to plaintiff, to defend or indemnify plaintiff against the claims in the underlying action.

1  -- OPINION AND ORDER

Defendant sought summary judgment against plaintiff's breach of contract claim and in favor of its claim for declaratory relief. This court issued an Opinion and Order denying defendant's first motion. Defendant subsequently filed a second Motion for Summary Judgment [33], which is the subject of this ruling. The court heard oral argument regarding this matter on July 17, 2006. For the reasons set forth below, defendant's Motion for Summary Judgment is granted.

## FACTUAL BACKGROUND

The essential facts in the instant case are outlined in this court's prior Opinion and Order. Pertinent provisions of the insurance policies that are relevant to the defendant's renewed Motion for Summary Judgment are reviewed below.

Plaintiff is engaged in the business of constructing complete water systems, including water-well drilling, installation of water pumps and controls, and related services. A large portion of plaintiff's business is the drilling of wells for water systems. Defendant is the underwriter of two commercial liability policies held by plaintiff. On May 14, 2002, plaintiff entered into a contract with Golf Solutions, LLC (Golf Solutions) to rehabilitate an existing water well located on the Stone Creek Golf Course in Clackamas County, Oregon. Approximately one year earlier, the well's pump had been damaged and removed because of the presence of large amounts of sand in the water, which had caused part of the well's walls to collapse. The collapsed portion of the well was located below the end of the well's steel casing, approximately 800 feet below ground level.

Plaintiff contracted with Golf Solutions to re-drill the lower borehole below the steel casing and to install a screen assembly and filter pack. After the lower section of the well was

re-drilled and a screen installed, plaintiff tested the altered portion of the well. During that process, one of plaintiff's employees damaged the screen. The damaged screen partially obstructed water passage up the screen and prevented access to the inside of the screen, hindering the completion of the well. Plaintiff attempted to repair the damage to the screen, but was unable to do so.

As a result of the damaged screen, the well could not produce the anticipated volume of water. Golf Solutions determined that the well was unusable and that construction of a new well was necessary.

In February 2004, Golf Solutions filed a cause of action against plaintiff in Clackamas County Circuit Court. In its First Amended Complaint, Golf Solutions alleged that plaintiff's negligence "render[ed] the well unusable . . . requiring a completely new well to be developed at a different location, at additional cost to [Golf Solutions]." Affidavit of Everett W. Jack, Jr. (Jack Aff.), Ex. 1 at 2-3. Golf Solutions alleged damages of: (1) $125,000 for the lost value of the original well; (2) $250,000 as the difference between the cost to build a new well and to repair the original well; (3) $60,000 for the cost of purchasing supplemental water; and (4) $10,000 for the cost of hiring a hydrologist during the construction of the new well.

Plaintiff tendered this Complaint to defendant for a defense. Defendant denied coverage. Plaintiff then initiated the present action against defendant for breach of contract.

**The Insurance Policies.**

At times relevant to this litigation, plaintiff Schneider had two commercial liability policies underwritten by defendant: (1) a commercial general liability policy (the CGL Policy)

3 -- OPINION AND ORDER

and (2) a Commercial Inland Marine policy (the IM Policy). Plaintiff purchased both of these policies through broker Derek Sadowski, an authorized producer for defendant.

The CGL Policy provides as follows:

Coverage A – Bodily Injury and Property Damage Liability.

1. Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.
. . . .

b.   This insurance applies to . . . "property damage" only if: (1) The . . . "property damage" is caused by an "occurrence" that takes place in the coverage "territory" . . . .

Jack Aff., Ex. 2 at 21.

The CGL Policy also contained the following exclusions:

2. Exclusions

This insurance does not apply to . . .

> h. <u>Damage to Property</u>
> "Property damage" to . . .
> (5) Property in the custody of the insured which is to be installed, erected or used in construction by any insured or on behalf of any insured.
> . . . .
> (6) That "particular part" of any property:
> > (a) On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or
> > (b) That must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> . . . .
> i. <u>Damage to Your Product</u>.
> "Property damage" to "your product" arising out of it or any part of it.
> . . . .
> j. <u>Damage to Your Work</u>.
> "Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard".

4  -- OPINION AND ORDER

> k. <u>Damage to Impaired Property or Property Not Physically Injured</u>.
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Jack Aff., Ex. 2 at 7, 9-10.

The IM Policy provides as follows:

A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

> 1. Covered Property
>
> Covered Property, as used in this Coverage Part, means:
>
> > a. "Contractors Equipment";
> >
> > b. "Computerized Business Equipment";
> >
> > c. "Installation".
>
> 2. Covered Causes of Loss
>
> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" except those causes of "loss" listed in the Exclusions.

Jack Aff., Ex. 3 at 20.

The IM Policy also contained the following exclusions:

B.  EXCLUSIONS

. . .

> 3. We will not pay for "loss" caused directly or indirectly by any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

5 -- OPINION AND ORDER

> . . .
>
> I. Omission in, or faulty, inadequate or defective:
>
> . . .
>
> (2) Materials, workmanship or maintenance.

Jack Aff., Ex. 3 at 25-28.

Also at issue in this action is a General Purpose Endorsement, which states as follows:

INSTALLATION COVERAGE – COVERED WORK LIMITATION

> "Installation" does not include:
>
> d. <u>Any work involving drilling operations</u>. The revenue generated from these operations need not be reported in the annual adjustment of premium.

Jack Aff., Ex. 3 at 40.

## <u>STANDARDS</u>

### 1. <u>Summary Judgment</u>

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c).

Deference to the non-moving party does have some limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### 2. Principles of Insurance Policy Construction

Generally, "[t]he interpretation of an insurance policy is a question of law." *N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739,741-42 (Or. 2001) *(citing Hoffman Const. Co. v. Fred S. James & Co.,* 836 P.2d 703, 706 (Or. 1992)). In interpreting an insurance policy, the court must focus on the intent of the parties, which is determined by looking to the terms and conditions of the policy. *Id.* (citations omitted). The policy must be considered as a whole and viewed by its four corners, and all parts and clauses must be construed to determine if any clause is modified, limited, or controlled by another. *Id.* (internal quotations and citations omitted).

If a term of an insurance policy is ambiguous, the court must construe the term against the drafter of the policy. *Id.* A term is ambiguous, for the purposes of this rule of construction,

if there are two or more reasonable interpretations of the term when examined in light of, among other things, the particular context in which the term is used in the policy and the broader context of the policy as a whole. *Id.* (citing *Hoffman*, 836 P.2d at 706). A term in an insurance policy may also be ambiguous if its meaning is not comprehensible for reasons such as indefiniteness, erroneous usage, or form of expression. *Id.*

### 3. Duty to Defend.

"Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 877 P.2d 80, 82-83 (Or. 1994) (*en banc*) (citations omitted). "An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Id.* (quotations omitted).

In determining whether an insurer has a duty to defend, a court must look only at the facts alleged in the complaint and determine whether they provide any basis for recovery. *Id.* Any ambiguity in the complaint as to whether the allegations could be covered must be resolved in favor of the insured. *Id.*

## DISCUSSION

### I. The CGL Policy and Exclusions.

Defendant argues that plaintiff's claim is not covered by the CGL Policy because the damage to the well falls under several policy exclusions. The court has reviewed the exclusions relied upon and concludes that each is applicable and would preclude coverage for the damage at issue. The court will limit its analysis to Exclusion h(6)(a)-(b), which renders discussion of the subsequent exclusions unnecessary.

///

**Exclusion h(6)(a)-(b).**

The CGL Policy excludes from coverage damage to property caused by an insured's work operations. In pertinent part, exclusion h(6)(a)-(b) precludes coverage for:

> (6) That "particular part" of any property:
>
> (a) On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or
>
> (b) That must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Damage to the well occurred exclusively at the specific depth and location where plaintiff was attempting to install a steel screen assembly. Moreover, the record establishes that the damage to the well was isolated to the area where the plaintiff attempted to install the steel screen assembly, and plaintiff concedes that plaintiff caused the damage. A plain reading of exclusion h(6)(a)-(b) establishes that coverage for the damage done to the portion of the well at issue is excluded under the CGL Policy. Accordingly, no genuine issue of material fact exists and summary judgment in favor of Travelers is proper.

Similarly, exclusion h(5) applies. Its terms exclude from coverage any property damage to property "in the custody of the insured which is to be installed, erected, or used in the construction." The only property damaged was the well screen assembly that was installed by plaintiff.

Moreover, the damaged steel screen assembly consisted of materials that were provided by and installed by plaintiff, rendering the exclusion to the insured's "product" applicable, as

9 -- OPINION AND ORDER

well.  Exclusion j excludes from coverage any property damage occurring to "your work" arising out of it, and includes materials, parts, or equipment furnished in connection with the work.  Undisputed deposition testimony established that the only damage to the well was to the parts upon which plaintiff had worked upon.

This court rejects plaintiff's contention that the well's resulting "limited functionality" should be construed as a covered "physical injury."  The plain provisions of exclusion k provides that any loss of use or functionality of the well caused by plaintiff's defective work in its installation of the steel screen assembly is excluded from coverage.  This court concludes that the loss of use of the well was wholly a result of plaintiff's defective work.

### II.     The IM Policy and Exclusions

Plaintiff also asserts that the damage at issue should be covered by the IM Policy.  The IM Policy insured against losses to "covered property," including "installation," resulting from any covered cause of loss.  Jack Aff., Ex. 3 at 20.

The phrase "covered cause of loss" is defined as any risk of direct physical loss except those listed in the applicable exclusions.  *Id.*  Those exclusions precluded coverage from losses caused by plaintiff's "[o]mission in, or faulty, inadequate or defective . . . [m]aterials, workmanship or maintenance" (Exclusion i), Jack Aff., Ex. 3 at 28, or by "[d]elay, loss of use or loss of market" (Exclusion 2(a)).  Jack Aff., Ex. 3 at 26.

Defendant renews arguments that the IM Policy does not cover the damage because an applicable endorsement excluded coverage for "drilling operations," and also contends that damages arising from plaintiff's faulty workmanship are excluded, as are damages that are based on loss of use of the well.  This court agrees.  Because the IM Policy was never intended to – and

10  -- OPINION AND ORDER

did not – provide coverage for losses arising from plaintiff's failure to complete its contract and be paid, defendant is entitled to summary judgment under this policy as well. Exclusion 3(i)(2) of the IM Policy expressly precludes coverages for losses resulting from omissions in or inadequate or defective materials, workmanship or maintenance. IM Policy at p.28. Plaintiff's claim under the IM Policy arises because it was never paid for its work on the water well – work that was inadequate and defective. This court concludes as a matter of law that plaintiff's contractual losses are excluded under the IM Policy.

Moreover, this court also concludes that the IM Policy's endorsement excluded drilling operations from coverage. This exclusion is unambiguous and is equally applicable as grounds for granting defendant summary judgment. Although the court denied defendant's prior motion regarding this argument, subsequent uncontradicted discovery has established that the endorsement should be construed as a valid part of the IM Policy. This endorsement amended the definition of "installation" and made clear that insurance coverage did not extend to work "involving drilling operations." IM Policy at p.40.

It cannot be disputed that the tasks for plaintiff's workmen included drilling through an existing well. The losses plaintiff seeks to recover arose from circumstances that undeniably "involved" drilling operations. There are no valid reasons offered to interpret this drilling operation exclusion as somehow limited to merely oil and gas drilling, or to construe the exclusion as ambiguous in any other way.

## **CONCLUSION**

This court concludes as a matter of law that under the insurance policies at issue, defendant was not obligated to plaintiff to defend or indemnify plaintiff against the claims in the

underlying action.  Accordingly, for the foregoing reasons, the Motion for Summary Judgment [33] brought by The Travelers Indemnity Company of Illinois is GRANTED.

IT IS SO ORDERED.

Dated this   29    day of September, 2006.

                                           /s/ Ancer L. Haggerty
                                                  Ancer L. Haggerty
                                             United States District Judge